IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
───────────────────────────────────────────────────────────────

DON JOHNSON'S HAYWOOD MOTORS, INC.,
GROSS MOTORS, INC., GROSS CHEVROLET-
BUICK-GMC, INC., BROADWAY AUTOMOTIVE –
GREEN BAY, INC., SLEEPY HOLLOW CHEVROLET
BUICK MGC INC., MIKE SHANNON
AUTOMOTIVE INC., HERITAGE CHEVROLET,
INC., A-F MOTORS, INC., KOCOREK CHEVROLET,
INC., KLEIN CHEVROLET BUICK, INC., TOYCEN          OPINION and ORDER
OF LADYSMITH, INC., and NEUVILLE MOTORS,
INC.,                                                   18-cv-919-jdp

                            Plaintiffs,
       v.

GENERAL MOTORS LLC,

                            Defendant.
───────────────────────────────────────────────────────────────

Plaintiffs—twelve Wisconsin-based licensed motor vehicle dealers—filed an administrative complaint against General Motors (GM) with the State of Wisconsin Division of Hearings and Appeals (DHA). *See* Dkt. 1-1. The complaint alleged that GM had violated Wis. Stat. § 218.0116(8) by modifying the terms of the plaintiffs' motor vehicle dealer agreements—specifically by seeking to impose a surcharge to recoup costs associated with Wisconsin's warranty reimbursement statute. Before administrative proceedings in the DHA got underway, GM removed the case to this court under 28 U.S.C. §§ 1332 and 1441, invoking the court's diversity jurisdiction. Dkt. 1. GM moved to dismiss plaintiffs' claims in full. Dkt. 2. Plaintiffs moved to remand the case to the DHA. Dkt. 10. Those motions are now ready for review.

The court concludes that the DHA action is not removable to federal court. To remove an action from an administrative agency under 28 U.S.C. § 1441, the removing party must

show that the agency is functionally similar to a court, and that the federal interests implicated in the dispute predominate over state interests. *See Floeter v. C.W. Transp., Inc.*, 597 F.2d 1100, 1102 (7th Cir. 1979). Here, even assuming that the DHA is sufficiently court-like, the court is not persuaded that the federal interests in hearing the dispute in this forum predominate over the state's interests in providing administrative oversight of motor vehicle dealer agreements. The court will grant plaintiffs' motion to remand. GM's motion to dismiss is denied as moot.

BACKGROUND

The court draws the basic facts from plaintiffs' administrative complaint, Dkt. 1-1, as well as from their prior related litigation against GM in the Eastern District of Wisconsin. *See Don Johnson Hayward Motors, Inc. v. Gen. Motors LLC*, No. 16-cv-1350, 2018 WL 4568822 (E.D. Wis. Sept. 24, 2018) (granting summary judgment in favor of GM on two counts).

Plaintiffs are a group of Wisconsin motor vehicle dealerships that sell and lease vehicles manufactured by GM. As part of their motor vehicle dealer agreements with GM, plaintiffs are required to perform warranty repairs on qualifying GM vehicles, at no cost to the owner and regardless where the owner bought the vehicle. Plaintiffs can be reimbursed by GM in one of two ways. The dealer agreements provide that GM will reimburse dealers for performing warranty repairs according to a reimbursement rate determined by GM. Alternatively, dealers may opt to receive reimbursements at a rate determined using the warranty-reimbursement provision in Chapter 218 of the Wisconsin Statutes. *See* Wis Stat. § 218.0125. The statute requires motor vehicle manufacturers and distributors to "reasonably compensate" dealers who perform those warranty repairs. In 2011, the legislature amended the act to add a statutory formula to determine the rate of reasonable compensation. *See* Wis. Stat. § 218.0125(3m)(a).

The court need not delve into the intricacies of that formula; the important point is that the statutory formula yields more generous reimbursement for plaintiffs than the rates set by GM. So each of the plaintiffs has requested the statutory warranty compensation.

On September 26, 2016, GM notified the plaintiffs that it would add a cost recovery surcharge to invoices on any new vehicles they purchased. This surcharge was intended to recover the increased costs associated with reimbursing plaintiffs and other Wisconsin dealers the enhanced amounts afforded under § 218.0125. A few weeks later, plaintiffs filed a federal case in the United States District Court for the Eastern District of Wisconsin, asserting that the surcharge violated GM's obligation to reasonably compensate dealers for warranty work under § 218.0125 and seeking injunctive relief to prevent GM from imposing the surcharge. *See Don Johnson Hayward Motors, Inc. v. Gen. Motors LLC*, No. 16-cv-1350 (E.D. Wis., filed Oct. 7, 2016). GM voluntarily held off on the surcharge until the court resolved the parties' cross-motions for summary judgment. On September 24, 2018, Judge Pamela Pepper granted summary judgment in favor of GM on two of plaintiffs' four counts, holding that GM's plan to impose the surcharge did not violate the guarantee of reasonable compensation under § 218.0125.[1] On October 8, 2018, GM notified plaintiffs that it intended to implement the surcharge.

On October 22, 2018, plaintiffs filed an administrative complaint against GM with the DHA, alleging that the per-vehicle surcharge violated another provision of Chapter 218: section 218.0116(8). *See* Dkt. 1-1 (DHA complaint). That section provides that vehicle manufacturers may not "modify a motor vehicle dealer agreement during the term of the agreement or upon

---

[1] Plaintiffs have since filed an amended complaint asserting other claims, and the case remains pending before Judge Pepper.

its renewal if the modification substantially and adversely affects the motor vehicle dealer's rights, obligations, investment or return on investment without giving 60 days written notice of the proposed modification to the motor vehicle dealer" except in certain circumstances not present here. Wis. Stat. § 218.0116(8)(a). The statute provides that, within the 60-day notice period, a motor vehicle dealer may "file with the department of transportation and the division of hearings and appeals and serve upon the respondent a complaint for a determination whether there is good cause for permitting the proposed modification." *Id.* The DHA must then "promptly schedule a hearing and decide the matter," taking into consideration "any relevant factor," including:

1. The reason for the proposed modification.

2. Whether the proposed modification is applied to or affects all motor vehicle dealers in a nondiscriminating manner.

3. The degree to which the proposed modification will have a substantial and adverse effect upon the motor vehicle dealer's rights, investment, or return on investment.

4. Whether the proposed modification is in the public interest.

5. The degree to which the proposed modification is necessary to the orderly and profitable distribution of product by the respondent.

6. Whether the proposed modification is offset by other modifications beneficial to the motor vehicle dealer.

*Id.* § 218.0116(8)(a), (b). A manufacturer who violates § 218.0116(8) may have its license to do business in Wisconsin suspended or revoked. *See id.* § 218.0116(1)(s).

In their administrative complaint, plaintiffs contend that GM's October 8, 2018 notice is a modification of their motor vehicle dealer agreements with GM—one that constitutes a "material change in an essential aspect of the franchise relationship between GM and each of

4

the complainants that will result in the complainant paying a significantly greater amount for new motor vehicles purchased from GM" than their competitors who opted not to receive statutory warranty compensation. Dkt. 1.1, ¶ 33. In their motion to dismiss, GM asks this court to dismiss plaintiffs' complaint because (1) plaintiffs failed to file it within 60 days of GM's original notice of its intent to impose the surcharge in September 2016; and (2) even assuming the complaint were timely filed, the proposed surcharge does not amount to an improper "modification" of a motor vehicle dealer agreement under § 218.0116(8).

ANALYSIS

GM asks the court to adjudicate its motion to dismiss in lieu of reaching the more "complex" issues presented by the motion to remand. Dkt. 16, at 20. But deciding the case on the merits before deciding a threshold issue—such as whether to remand—would be improper. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (federal courts have discretion to choose among *threshold grounds* for denying audience to a case on the merits, meaning grounds that do not require the court to "proceed at all" to an adjudication of the case). This case begins (and ends) with the remand issue.

Section 1441(a) of Title 28 allows removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." Plaintiffs concede that this court would have original jurisdiction over the dispute under the federal diversity statute, 28 U.S.C. § 1332: plaintiffs are citizens of Wisconsin; GM is incorporated in Delaware and maintains its principle place of business in Michigan; and more than $75,000 is in dispute. Plaintiffs contend that the DHA is not a "State court" in the sense relevant to removal. The removal statute does not define "State court," but the Seventh Circuit has determined that

5

"the title given to a state tribunal is not determinative; it is necessary to evaluate the functions, powers, and procedures of the state tribunal and consider those factors along with the respective state and federal interests in the subject matter and in the provision of a forum." *Floeter*, 597 F.2d at 1102. Although other circuits have trended away from this two-part "functional test" in favor of a more formalistic approach in recent years, *see Porter Tr. v. Rural Water Sewer & Solid Waste Mgmt. Dist. No. 1*, 607 F.3d 1251, 1254–55 (10th Cir. 2010) (collecting cases), the two-part *Floeter* test still applies in the Seventh Circuit. *See Wirtz Corp. v. United Distillers & Vinters of N. Am., Inc.*, 224 F.3d 708, 710 (7th Cir. 2000) (applying *Floeter*'s functional test).

Following the *Floeter* approach, the court considers (1) whether the DHA's procedures are "substantially similar to those traditionally associated with the judicial process," and (2) whether the "state's interest in providing a convenient and expeditious tribunal to adjudicate the rights and interests of the parties . . . outweigh the defendant's right to remove the action to federal court." *Floeter*, 597 F.2d at 1102. GM must meet both requirements for removal to be proper. "[A]ny doubts about the propriety of removing a particular action should be resolved against allowing removal." *Id.* at 715 (Ripple, J., concurring) (collecting cases).

## A. Similarity to judicial process

GM contends that plaintiffs' proceedings before the DHA are essentially judicial in character. The DHA hearing process features many of the functions, powers, and procedures typical of courts. Parties to proceedings before the DHA have the right to take and preserve evidence through depositions and written interrogatories, issue subpoenas to compel the attendance of witnesses or the production of evidence, put on evidence at hearings, and conduct cross-examinations. *See* Wis. Stat. §§ 227.44(3), 227.45(6), (6m), (7). DHA hearing

6

examiners prepare findings of fact and conclusions of law, and issue proposed orders and opinions that may be adopted as the final decision by the agency. Wis. Stat. § 227.46(2m).

Plaintiffs offer two arguments in response. First, they note that Wis. Stat. § 218.0116(8) instructs complainants to file complaints with the Wisconsin Department of Transportation (DOT) as well as the DHA, and that the DOT is not at all similar to a court. The DOT administers the state's licensing regime by defining unfair practices in the motor vehicle industry and issuing, suspending, and revoking licenses—broad administrative powers that differ from those of a traditional court. But although Wis. Stat. § 218.0116(8) requires complainants to cross-file their complaints with the DOT, it is "the Division of Hearings and Appeals, not the Department of Transportation, [that] is charged by the legislature with hearing disputes under Wis. Stat. § 218.0116(8)." *Racine Harley-Davidson, Inc. v. State, Div. of Hearing & Appeals*, 2006 WI 86, ¶ 21, 292 Wis. 2d 549, 566, 717 N.W.2d 184, 192, *abrogated on other grounds by Tetra Tech EC, Inc. v. Wis. Dep't of Rev.*, 2018 WI 75, 382 Wis. 2d 496, 914 N.W.2d 21. So the DHA is the relevant focus of the court's analysis in determining whether the agency adjudicating plaintiffs' dispute is functioning as a state "court" within the meaning of the removal statute. *See Floeter*, 597 F.2d at 1102 (court focused its analysis on the adjudicative function of the Wisconsin Employment Relations Commission, even though the agency's jurisdiction was "much broader than simply adjudicating actions alleging breaches of collective bargaining agreements"); *see also Lou Bachrodt Chevrolet Co. v. Gen. Motors LLC*, No, 12 C 7998, 2013 WL 3754833, at *5 (N.D. Ill. July 15, 2013) (rejecting argument that Illinois Motor Vehicle Review Board's extra-judicial powers distinguished it from a court for removal purposes). That Chapter 218 requires complainants to cross-file their administrative complaints with the DOT is of no consequence.

7

Second, plaintiffs argue that various limitations on the DHA's authority make it categorically unlike a court. DHA hearing examiners lack the ability to enforce subpoenas, for example, and must apply to a court to enforce them instead. *See* Wis. Stat. § 885.12. Similarly, hearing examiners cannot conduct a jury trial, nor can they enter an injunction or award damages. If a manufacturer is found to have violated § 218.0116(8) and fails to comply with the agency's final decision, the DOT may initiate license suspension or revocation proceedings but may not order additional relief. Plaintiffs cite several out-of-circuit cases in which courts have deemed such limitations relevant in deciding to remand administrative cases to state agencies. *See, e.g.*, *Sun Buick, Inc. v. Saab Cars USA, Inc.*, 26 F.3d 1259, 1265 (3d Cir. 1994) (noting as relevant to the inquiry that agency lacked the power to award damages and its "powers of action to afford relief [were] circumscribed"); *Rockville Harley-Davidson v. Harley-Davidson Motor Co.*, 217 F. Supp. 2d 673, 677 (D. Md. 2002) (agency did not exercise judicial power because it had no authority to enforce subpoenas and could provide no declaratory, monetary, or injunctive relief other than license revocation or suspension); *Southaven Kawasaki-Yamaha v. Yamaha Motor Corp. U.S.A.*, 128 F. Supp. 2d 975, 980 (S.D. Miss. 2000) (same).

But these distinctions are probably not material under Seventh Circuit precedent. In *Floeter*, the Seventh Circuit held that an agency's "need to resort to the court system for enforcement of its orders does not change the essentially judicial character of the proceedings." 597 F.2d at 1102. So the inability of DHA hearing officers to enforce subpoenas is not dispositive. And as for the DHA's inability to hold jury trials or award the full panoply of remedies, "courts conduct many types of proceedings without juries, and many judicial 'courts' have jurisdictional limits on the remedies that they are authorized to provide, so the availability

of a jury and the power to impose damages generally cannot be dispositive either." *Lou Bachrodt Chevrolet Co*, 2013 WL 3754833, at *5.

Plaintiffs cite no in-circuit precedent that supports their position that DHA proceedings are not sufficiently court-like. Most of the cases that the court has found cut against plaintiffs' position. *See id.* at *4–6 (in case involving the Illinois Motor Review Board, which lacked power to enforce its own orders, compel attendance of witnesses and production of documents, impanel a jury, or award damages, court nonetheless concluded that the removing party had "the better of the argument with respect to the [agency's] 'courtness' in the context of [plaintiff's] petitions"); *Doucas Volkswagen, Inc. v. Volkswagen of America, Inc.*, No. 94-C-693-C, at 6 (W.D. Wis. Nov. 21, 1994) (in upholding the removal of an administrative complaint involving car dealer and car manufacturer, court noted that "many of the procedures the Division of Hearings and Appeals would employ to resolve the present dispute are 'substantially similar to those traditionally associated with the judicial process'" (quoting *Floeter*, 497 F.2d at 1102)). *But see RJ Distrib. Co. v. Sutter Home Winery, Inc.*, No. 99 C 3836, 1999 WL 571009, at *2 (N.D. Ill. July 29, 1999) (Illinois Liquor Control Commission was "not functionally a court" because it was authorized only to revoke liquor licenses and could not award damages, injunctions, or other relief).

GM has the better argument: the DHA proceedings are probably sufficiently court-like to support removal. But plaintiffs prevail on the second of *Floeter*'s two requirements.

B. **State interests versus federal interests**

GM contends that the federal interest in providing a forum for diverse litigants "outweighs any state interest in providing an administrative tribunal to adjudicate the rights of the parties—particularly here, where no state licensing or regulatory interest is at stake."

9

Dkt. 16, at 17. But the Seventh Circuit has made clear that a stand-alone interest in diversity jurisdiction generally does not outweigh a specific, well-established state regulatory interest. *See Wirtz*, 224 F.3d at 713 (holding that the federal interest in "the diversity jurisdiction process is outweighed by the state's interest in administering its own alcoholic beverages program"). And plaintiffs' administrative complaint implicates a strong state interest in licensing and regulating motor vehicle dealerships. The legislature enacted Chapter 218 more than 80 years ago to address "the gross disparity of bargaining power between the manufacturer of automobiles and the local retailer" and "the long history of the abuse of dealers by manufacturers." *Forest Home Dodge, Inc. v. Karns*, 29 Wis. 2d 78, 85, 138 N.W. 2d 214, 217–18 (1965). In keeping with that interest, Wis. Stat. § 218.0116(8) established an administrative procedure to protect dealers from unwarranted modifications to dealer agreements.

GM advances three principal arguments why the federal interest implicated here outweighs Wisconsin's regulatory interest. First, it argues that this dispute is "one principally for breach of contract—a matter traditionally decided by a court." Dkt. 16, at 17. But that's not accurate. Although the dispute involves plaintiffs' dealer agreements, the § 218.0116(8) proceedings concern not whether there has been a breach of the agreement, but whether GM's proposed modification complies with state administrative law. Deciding the dispute requires application of specific public policy considerations enumerated by the state legislature, *see* Wis. Stat. § 218.0116(8)(b), and not traditional breach-of-contract principles.

For that reason, GM's citation to *Doucas Volkswagen* is inapposite. *Doucas Volkswagen* was a 1994 case in which Judge Crabb noted that, "as for the respective state and federal interests," the DHA was "acting not in its administrative or regulatory capacity, but to resolve a contractual dispute between the parties." *See* Dkt. 16-1, at 9. She then noted that she was

"aware of no unique interest of the State of Wisconsin in providing an administrative tribunal to adjudicate the rights of the parties that outweighs Volkswagen's right to remove the case." *Id.* The plaintiff in *Doucas Volkswagen* did not oppose removal, so the court would not put great weight on Judge Crabb's succinct description of the state's interest in providing an administrative tribunal under Chapter 218. And unlike this case, *Doucas Volkswagen* involved a single dealership's allegation that it had been wrongfully terminated by the manufacturer, in violation of the Wisconsin Fair Dealership Act. The issue was fundamentally a private contract dispute, albeit one judged in the context of the state regulatory framework governing dealership contracts. In this case, individual contractual concerns are subordinate to the public policy considerations that the DHA must bring to bear on the question of whether GM will be allowed to make a blanket modification to its Wisconsin dealership contracts. Finally, *Doucas Volkswagen* predates *Wirtz*, in which the Seventh Circuit elaborated on the proper balancing of state and federal interests. *Wirtz* makes clear that providing an administrative tribunal to adjudicate matters of importance to the state usually constitutes a substantial state interest sufficient to overcome the federal interest in diversity jurisdiction.

GM's second argument is that for many statutory claims, Chapter 218 expressly provides dealers with the option of proceeding before the DHA or by filing an action in state or federal court. *See* Wis. Stat. § 218.0163(1) (providing that dealers may recover damages in court for violations of various enumerated provisions of Chapter 218). In GM's view, this shows that the state does not regard judicial adjudication of manufacturer-dealer disputes as a threat to Wisconsin's motor vehicle-related regulatory scheme. But plaintiffs couldn't have filed a state or federal lawsuit asserting violations of Wis. Stat. § 218.0116(8), because the legislature expressly excluded that subsection from the list of statutory provisions for which

11

dealers may seek damages in court without exhausting administrative remedies. *See id.* ("Without exhausting any administrative remedy . . . , except as provided in §§ 218.0116(7) and (8) and 218.0134, a licensee may recover damages in a court of competent jurisdiction for pecuniary loss . . . if the pecuniary loss is caused by any of the following . . . ."). The only way for a dealer to seek damages in court for violations of § 218.0116(8) is to prevail at the DHA first. *See* Wis. Stat. § 218.0163(3). Thus, contrary to GM's assertions, the statutory provisions governing the availability of court remedies in fact suggest that the state legislature regarded agency adjudication of claims under § 218.0116(8) as particularly significant to its regulatory scheme.

Third, GM argues that plaintiffs' federal litigation history refutes their assertions that the interests predominantly implicated in their DHA action are state rather than federal. Plaintiffs asserted claims under Chapter 218 as part of its 2016 case in the Eastern District, and they have subsequently amended their complaint in that case to assert federal claims for alleged violations of the Automobile Dealers Day in Court Act, 15 U.S.C. § 1221 *et seq.*, and the Robinson-Patman Act, 15 U.S.C. § 13. In GM's view, this means that "plaintiffs have effectively conceded that the motor vehicle manufacturer-dealer relationship at issue here implicates important issues of interstate commerce, such that the federal interest in adjudicating [the Eastern District and Western District] cases includes addressing substantive questions of federal law—not simply providing a diverse forum." Dkt. 16, at 19.

Plaintiffs are waging their campaign against GM on several fronts, which raises questions about judicial economy. But GM doesn't explain why it would be appropriate for this court to impute the federal interests implicated in a different lawsuit to this case. In this case, plaintiffs have not sought to avail themselves of a federal forum or to assert federal causes

12

of action. Instead, they filed an administrative complaint through the mechanism provided by Wis. Stat. § 218.0116(8), alleging that their motor vehicle dealership agreements had been adversely modified without good cause. This is not a cause of action that they could have initially raised in federal court, *see* Wis. Stat. § 218.0163(3), and removing the matter to this court achieves no overall economy.

The court concludes that Wisconsin's interest in regulating manufacturer-dealer relationships through Wis. Stat. § 218.0116(8) outweighs any countervailing federal interest. Accordingly, it will grant plaintiffs' motion and remand the case to the DHA.

ORDER

IT IS ORDERED that:

1. Plaintiffs' motion to remand, Dkt. 10, is GRANTED.

2. Defendant General Motors LLC's motion to dismiss, Dkt. 2, is DENIED as moot.

3. The case is remanded to the State of Wisconsin Division of Hearings and Appeals. The clerk is directed to return the record to the agency along with a certified copy of this order.

Entered May 16, 2019.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge